UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROLAND LOTT,

              Plaintiff,

     -v-                            6:13-CV-06420 (MAT)
                                         **DECISION AND ORDER**

CURTIS CUNNINGHAM, ADAM HARDEN,
MIGDALIA PLAZA, SGT. NELSON SOTO,
DEPUTY NICHOLAS LABASH, DEPUTY
CHRISTOPHER BURDICK, CORPORAL
FRANK FARSACE, DEPUTY MICHELLE
DEBAY, DEPUTY ISAIAH RABY, DEPUTY
RAYMOND GAGNIER, DEPUTY TRAVIS
BURLESON, DEPUTY SIMON GREEN,
SARAH FISHER, and DAWN FLETCHER,

              Defendants.
_____

## I.    Introduction

    *Pro se* plaintiff Roland Lott ("plaintiff")commenced the
instant action on August 9, 2013, alleging a violation of his civil
rights pursuant to 42 U.S.C. § 1983.  Currently pending before the
Court are three motions for summary judgment: one filed by
defendants Sarah Fisher and Dawn Fletcher (collectively the "nurse
defendants") (Docket No. 62); one filed by defendants Christopher
Burdick, Travis Burleson, Michelle Debay, Frank Farsace, Raymond
Gagnier, Simon Green, Nicholas Labash, and Isaiah Raby
(collectively the "County defendants") (Docket No. 63); and one
filed by defendants Curtis Cunningham, Adam Harden, Migdalia Plaza,
and Nelson Soto (collectively the "RPD defendants") (Docket No.
64).  Plaintiff has filed a response in opposition to the pending

summary judgment motions. For the reasons discussed below, the Court grants the pending summary judgment motions and orders that the case be closed.

## II.  Background

The following facts are taken from the respective statements of fact, affidavits, and exhibits submitted by plaintiff and defendant, as well as the docket in this matter.

Plaintiff alleges in his complaint that on August 10, 2010, at approximately 2 a.m., he and his brother were stopped at a motor vehicle checkpoint operated by the Rochester Police Department (the "RPD"). According to plaintiff, unknown police officers forced his brother, Ronald Lott ("Ronald"), out of the car, beat him, and handcuffed him. Plaintiff alleges that an unknown RPD officer then approached him, held a bottle of pepper spray to his eye, and threatened to discharge it. Plaintiff claims that he and Ronald were subsequently arrested and taken to the Monroe County Jail, where plaintiff was processed and then released. Plaintiff further claims that while he was walking to his car after having been released, unknown officers ran towards him, attacked him with pepper spray, handcuffed him, and placed him in a cell. Then, plaintiff alleges, an unknown Monroe County sheriff's deputy pulled plaintiff's hands through the bars of the cell and began beating them, telling plaintiff he would not stop until plaintiff cried out in pain. Plaintiff claims that he was held in the Monroe County

Jail for seven days and denied medical treatment for the damage to his hands.

Plaintiff originally named the RPD, Monroe County, and John Does 1-10, as designations for the unknown officers involved in the alleged deprivation of his civil rights, as defendants in this action. By order dated February 25, 2014, the Court ordered the City of Rochester and Monroe County to provide information to facilitate the identification of the John Doe defendants. The currently named individual defendants were identified as the RPD officers working the safety checkpoint at which plaintiff was arrested, the Monroe County Sheriff's deputies working in the booking area of the Monroe County Jail on the night in question, and the nurses scheduled to work at the Monroe County Jail on the night in question, and were substituted as defendants upon provision of this information. On July 1, 2014, the Court dismissed the RPD and Monroe County as defendants.

The City of Rochester's records indicated that, on the night in question, plaintiff stopped at a safety check point on Bay Street operated by Officer Migdalia Plaza and Sergeant Nelson Soto, and was arrested for driving while intoxicated. Plaintiff was then transported by the RPD to booking at the Monroe County Jail.

Plaintiff was deposed in connection with this matter on multiple occasions. During these depositions, plaintiff testified that his complaint was incorrect, and that he was not beaten after

3

having been mistakenly released, but that he instead was beaten within the first 20 minutes of having been taken to the Monroe County Jail.  Plaintiff testified that a single female officer transported him to the Monroe County Jail, where he was taken into custody by other officers, and that the female officer who transported him to the building was not one of the officers who beat him.  Plaintiff specifically testified that he was not beaten until he was brought into the Monroe County Jail.  Plaintiff also testified that when he was taken to the Monroe County Jail, he was not taken to booking, but was instead led by an unidentified officer to a hallway, where he was beaten by five to six unidentified individuals who hit, kicked, and stomped on his hands.  Plaintiff  further testified that he was then placed in a cell, where he was directed to place his hands through an opening, and his hands were again beaten.  At his deposition, plaintiff testified that he did not know how many individuals were involved in the alleged beating, that he did not know if the individuals who allegedly beat him were RPD officers or Monroe County Sheriff's deputies, that he could not identify the individuals who allegedly beat him, that he could not identify the uniforms that the officers who allegedly beat him were wearing, and that he did not know the gender of the officers who allegedly beat him.  In his response to the pending motions for summary judgment, plaintiff reiterated that he does not know who allegedly beat him.

Monroe County's records indicate that plaintiff was booked at the Monroe County Jail by Deputies Nicholas Labash and Christopher Burdick. Monroe County's records further indicate that when plaintiff's handcuffs were removed, he claimed that his wrist was broken. Plaintiff was examined by a Nurse Dawn Fletcher, who observed that his left hand was swollen and referred him for an x-ray. An x-ray of plaintiff's left wrist was taken while he was in the Monroe County Jail, and showed no evidence of an acute fracture or dislocation. Plaintiff testified at his initial deposition that he was treated nicely by jail medical personnel, but later testified that he could not recall whether he saw a nurse while he was at the Monroe County Jail, and that he could not remember whether an x-ray was taken.

## III. Discussion

### A. Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational

jury could find in favor of that party, a grant of summary judgment is appropriate.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007), citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).  A party opposing a motion for summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'"  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87).

**B.    Claim Against the RPD Defendants**

The RPD defendants move for summary judgment, arguing that plaintiff cannot connect any RPD officer to any alleged violations of his civil rights.  The RPD defendants point out that fact discovery in this case has been closed since February 1, 2016, and that despite having had ample opportunity to conduct discovery, plaintiff has failed to identify or produce any evidence tending to show that any named RPD defendant ever touched him.

The Court agrees that, even accepting all of plaintiff's allegations as true, he has nonetheless failed to produce evidence of a civil rights violation by any of the RPD defendants. Plaintiff testified that he was not beaten at the safety checkpoint where he was arrested, and denied that the female RPD officer who transported him to the Monroe County Jail was involved in the alleged beating.   The Monroe County Jail, where the beating

allegedly occurred, is staffed by employees of the Monroe County Sheriff, not by RPD officers.  Accordingly, there is no rational basis on which a juror could conclude that any RPD defendant was involved in the alleged beating of plaintiff.  Summary judgment in favor of the RPD defendants is therefore warranted.

Plaintiff did specifically testify that a female Hispanic RPD officer threatened to spray him with mace if he did not stop talking.  However, "claims of verbal abuse are insufficient to establish a constitutional violation as a matter of law." *Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 271 (S.D.N.Y. 2011); *see also Merrill v. Schell*, 2017 WL 3726969, at *3 (W.D.N.Y. Aug. 30, 2017) ("Mere threats or verbal harassment, without any appreciable injury, generally are not actionable under section 1983.") (internal quotation omitted); *Dunkelberger v. Dunkelberger*, 2015 WL 5730605, at *15 (S.D.N.Y. Sept. 30, 2015) ("A threat of force does not constitute excessive force.") (internal quotation omitted); *Smith v. City of New York*, 2015 WL 3929621, at *3 n. 3 (S.D.N.Y. June 17, 2015) ("To the extent that [the plaintiff] intends to assert an excessive force claim based on threats of violence . . ., the claim would fail because, in [the Second] Circuit, neither mere verbal abuse nor mere threats of force support an excessive force claim.").  Even had the officer in question made contact with the plaintiff, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a

7

judge's chambers, . . . violates the Fourth Amendment." *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004)(internal quotation omitted). Accordingly, even assuming that the Hispanic female officer plaintiff referred to in his deposition was named defendant Officer Migdalia Plaza, plaintiff has not produced any evidence that she engaged in excessive force.

**C.    Claims Against the County Defendants**

The County defendants have also moved for summary judgment, arguing that there is no evidence in the record from which a rational jury could conclude that any of them were personally involved in the alleged beating of plaintiff.  The Court agrees.

"[I]n order to establish a civil rights violation, those responsible for the alleged violating conduct must be specifically identified." *Sheikh v. Morales*, 2006 WL 2223943, at *4 (D. Conn. July 31, 2006) (internal quotation omitted).  Here, plaintiff has not produced or identified any evidence tying any of the named County defendants to his alleged beating.  The named County defendants were identified as having been working in booking at the Monroe County Jail on the night in question.  Plaintiff testified, however, that he was not taken to booking before he was beaten, and that the alleged beating did not take place in booking.  In short, the Court is faced with a situation where the sole connection between the named County defendants and the alleged beating of plaintiff is that they were working in an unrelated area of the

Monroe County Jail on the night in question.

Courts in this Circuit have not hesitated to grant summary judgment to defendants under similar circumstances. *See, e.g., Piper v. City of Elmira*, 12 F. Supp. 3d 577, 591–92 (W.D.N.Y. 2014) ("In order to hold an officer liable for excessive force, a plaintiff must adduce sufficient evidence to raise an issue of fact as to whether the officer was personally involved in the use of the claimed excessive force. . . . [T]he mere fact that [an] [o]fficer was present for the . . . incident does not, on its own, establish that he had either awareness of excessive force being used or an opportunity to prevent it.") (internal quotation omitted); *Cosby v. City of White Plains*, 2007 WL 853203, *4 (S.D.N.Y.2007) ("plaintiff had ample time to conduct discovery to identify the police officers responsible for his alleged injuries; discovery is now complete and plaintiff fails to identify any additional defendants [;] [n]or does plaintiff assert that additional discovery or trial will reveal these defendants' identities"); *Universal Calvary Church v. City of New York*, 2000 WL 1538019, *16–20 (S.D.N.Y.2000) ("[M]ere presence at the site of a melee . . . is not evidence of personal involvement[;] ... [w]ithout any evidence linking any of the [d]efendants to the use of force in any way, this [c]ourt cannot allow the charge to go to trial when the [d]efendants are being held personally liable for constitutional violations").

There is simply no evidence from which a rational jury could

conclude that the County defendants were personally involved in the alleged violation of plaintiff's civil rights. Merely having been at the Monroe County Jail on the night in question does not establish that these officers participated in or were aware of the alleged beating of plaintiff. Therefore, summary judgment in favor of the County defendants is warranted.

**D.    Claims Against the Nurse Defendants**

Finally, the Court must consider whether the nurse defendants are entitled to summary judgment.  The nurse defendants argue that there is no evidence they were deliberately indifferent to plaintiff's medical needs, or that they participated in any deprivation of medical treatment.  Again, the Court agrees.

"A custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official (1) denied treatment needed to remedy a serious medical condition and (2) did so because of his deliberate indifference to that need." *Universal Calvary Church*, 2000 WL 1538019, at \*8.  "The deliberate indifference standard embodies both an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, 'sufficiently serious,' [and][s]econd, the charged official must act with a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal citations omitted). In order to satisfy the objective prong, a plaintiff must have a serious medical need that "contemplates a condition of

10

urgency, one that may produce death, degeneration, or extreme pain." *Id.* (internal quotation omitted). To satisfy the subjective prong, the plaintiff must produce evidence that a specific defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and did in fact draw that inference. *Farmer v.Brennan*, 511 U.S. 825, 833-34 (1994).

Here, as the nurse defendants correctly argue, even assuming that plaintiff was suffering from a serious medical need, there is no evidence that either of the named nurse defendants were aware of and ignored that need. Monroe County's records show that Nurse Fletcher did a medical screening of plaintiff on August 16, 2010, and noted that his left hand was swollen. Nurse Fletcher referred plaintiff for an x-ray of his left wrist, which showed no acute fracture or dislocation. With respect to Nurse Fisher, she called in sick on the night in question, and never saw or interacted with plaintiff in any way.

Plaintiff's testimony regarding the medical treatment he received at the Monroe County Jail has been confusing and internally inconsistent. He originally testified that jail medical personnel had treated him "nicely" and taken x-rays of his hands, but later claimed that he never saw any medical professional while held in the Monroe County Jail. However, under either version of plaintiff's testimony, he has failed to establish deliberate

indifference to his medical needs. Accepting his initial claim that jail medical personnel (presumably Nurse Fletcher) treated him "nicely" and referred him for x-rays, this testimony establishes that plaintiff was in fact provided with medical services and that active steps were taken to ensure that his medical needs were being met. On the other hand, accepting plaintiff's claim that he never saw a nurse, the nurse defendants cannot be held liable for having failed to provide medical services to a plaintiff they never saw and had no way of knowing was suffering from a serious medical condition. In either case, plaintiff has failed to identify or produce any evidence from which a rational jury could find the nurse defendants liable, and they are therefore entitled to judgment in their favor.

### E. Plaintiff's Motion For Appointment of Counsel

In addition to opposing the pending motions for summary judgment, plaintiff has filed a motion for appointment of counsel (Docket No. 65). In light of the Court's determination that defendants are entitled to judgment in their favor, plaintiff's motion is denied as moot.

## IV. Conclusion

For the reasons set forth above, the Court grants the nurse defendants' motion for summary judgment (Docket No. 62), the County defendants' motion for summary judgment (Docket No. 63), and the City defendants' motion for summary judgment (Docket No. 64).

12

Plaintiff's motion to appoint counsel (Docket No. 65) is denied as moot.  The Clerk of the Court is instructed to enter judgment in favor of defendants and to close the case.

      **ALL OF THE ABOVE IS SO ORDERED.**

                          s/Michael A. Telesca

                      _____

                          MICHAEL A. TELESCA
                  United States District Judge

Dated:    October 6, 2017
          Rochester, New York